**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| CAMERON INTERNATIONAL CORPORATION, | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 4:18-cv-02533 |
| v. | § § | |
| NITRO FLUIDS L.L.C., | § § | **JURY TRIAL REQUESTED** |
| Defendant. | § § § | |

## **JURY CHARGE**

## I.     GENERAL INSTRUCTIONS

**Instruction No. 1: Introduction and Juror's Duties[1]**

MEMBERS OF THE JURY:

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

·     The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

---

[1] Fifth Circuit Pattern Jury Instructions – Civil, 3.1 (June 2020).

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for the plaintiff or the defendant in arriving at your verdict.

**Instruction No. 2: Evidence[2]**

As I instructed you at the beginning of trial, there are two standards of proof that you will apply to the evidence, depending on the issue you are deciding. On some issues, you must decide whether certain facts have been proven by a preponderance of the evidence. A preponderance of the evidence means that the fact that is to be proven is more likely true than not, that is, that the evidence in favor of that fact being true is sufficient to tip the scale, even if slightly, in its favor. On other issues that I will identify for you, you must use a higher standard and decide whether the fact has been proven by clear and convincing evidence, that is, that you have been left with a clear conviction that the fact has been proven.

The evidence you are to consider consists of the testimony of the witnesses, stipulations of the parties, the documents and other exhibits admitted into evidence, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts considering all the evidence, both direct and circumstantial.

A "stipulation" is an agreement. When there is no dispute about certain facts, the attorneys may agree or "stipulate" to those facts. You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

Certain charts and summaries have been shown to you solely to help explain or summarize the facts disclosed by the books, records, and other documents that are in evidence. These charts

---

[2] Fifth Circuit Pattern Jury Instructions – Civil, 3.3, 2.3, 2.7 (June 2020).

and summaries are not evidence or proof of any facts. You should determine the facts from the evidence.

**Instruction No. 3: Witnesses[3]**

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

---

[3] Fifth Circuit Pattern Jury Instructions – Civil, 3.4 (June 2020).

**Instruction No. 4: Expert Witnesses[4]**

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely on it.

---

[4] Fifth Circuit Pattern Jury Instructions – Civil, 3.4 (June 2020).

## II.     THE ASSERTED PATENTS

**Instruction No. 5: Summary of Contentions[5]**

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I previously told you, Cameron seeks money damages from Nitro for infringing two patents. Those patents are U.S. Patent Nos. 9,932,800 and 10,385,645. These patents have been referred throughout this case collectively as the Patents-in-Suit or Asserted Patents, or individually as the '800 Patent and the '645 Patent.

In this case, you will not need to decide the issue of infringement because Nitro has conceded that it infringes the Asserted Claims of the Asserted Patents. However, Nitro argues that the asserted claims of the Asserted Patents are invalid.

Your job is to decide whether any of the asserted claims of the Asserted Patents are invalid. If you decide that any claim of the Asserted Patents is not invalid, you will then need to decide any money damages to be awarded to Cameron to compensate it for the infringement.

You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damages award you make. I will take willfulness into account later.

---

[5] FCBA Model Patent Jury Instructions – ¶ B.1.

**Instruction No. 6: Patent Claims[6]**

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

To know what a patent covers, a patent claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. The requirements of a claim are often referred to as "claim elements" or "claim limitations." The coverage of a patent is assessed claim-by-claim. When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a system, product, or process where each of the claim elements or limitations is present in that system, product, or process.

You will first need to understand what each claim covers in order to decide whether or not the claim is invalid. The first step is to understand the meaning of the words used in the patent claim.

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions of the terms I have construed to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of certain claim terms and I will now provide to you my definitions of certain claim terms:

---

[6] FCBA Model Patent Jury Instructions – ¶ B.2.1.

- The term "fracturing tree" means "a tree used to facilitate a fracturing process, and does not require a tree of a particular size or weight or a tree that is temporarily installed only for the fracturing process."

- The terms "fracturing manifold" or "fracturing fluid distribution manifold" means "a flow path for the distribution of fracturing fluid from a source of fracturing fluid to one or more fracturing trees that includes at least one valve."

These definitions are in your Juror Notebooks. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the validity issues that you are deciding.

For any words in the claim for which I have not provided you with a definition, you should apply the ordinary meaning of those terms in the field of the patent. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the invalidity issues that you are being asked to decide. These issues are yours to decide.

**Instruction No. 7: Independent and Dependent Claims**[7]

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. The following asserted claims are independent claims:

- Claim 11 of the '800 Patent; and

- Claims 10 and 17 of the '645 Patent.

The remainder of the claims in the Asserted Patents are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers.

---

[7] FCBA Model Patent Jury Instructions – ¶ B.2.1a.

## III.    INVALIDITY

**Instruction No. 8: Burden of Proof[8]**

I will now instruct you on the rules you must follow in deciding whether or not Nitro has proven that the claims of the Asserted Patents are invalid.  Patents are presumed valid.  To prove that any claim of a patent is invalid, Nitro must persuade you by clear and convincing evidence, that is, you must be left with a clear conviction that the claim is invalid.

---

[8] FCBA Model Patent Jury Instructions – ¶ B.4.1.

**Instruction No. 9: Prior Art[9]**

In order for someone to be entitled to a patent, the invention must actually be "new" and not obvious over what came before, which is referred to as the prior art. Prior art is considered in determining whether the Asserted Claims of the Asserted Patents are anticipated or obvious. Prior art may include items that were publicly known or that have been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention.

Nitro contends that the following systems are prior art to the '800 Patent:

- Power Chokes system
- Horn River system

Nitro contends that the following references and systems are prior art to the '645 Patent:

- U.S. Patent Publication No. 2009/0114392 ("Tolman")
- U.S. Patent No. 6,893,558 ("McGee")
- U.S. Patent Publication No. 2011/0030963 ("Demong")
- U.S. Patent Publication No. 2009/0194273 ("Surjaatmadja")
- U.S. Patent Publication No. 2012/0181016A1 ("Keene")
- U.S. Patent Publication No. 2012/0060929 ("Kendrick")
- API 6A Specification for Wellhead and Christmas Tree Equipment ("API 6A")
- The article published in World Oil Magazine in 2010 ("World Oil Article")
- Power Chokes system
- Horn River system

---

[9] FCBA Model Patent Jury Instructions – ¶ B.4.3a-1, ¶ B.4.3a-.

Cameron disputes whether the Horn River System is prior art to the Asserted Patents.  You must determine whether this system is prior art that can be considered in determining whether the Asserted Claim of the Asserted Patents are anticipated or obvious. To be prior art, the systems must be known to or used by others in the United States before the earliest priority date for each of the Asserted Claims, or publicly used, sold, or offered for sale in the United States one year before that date. Nitro must prove by clear and convincing evidence that these systems are prior art.

An invention is known when the information about it was reasonably accessible to the public in the United States on that date.  An invention was sold or offered for sale when it was offered commercially and what was sold or offered was reduced to practice, which means that it had been made and worked for its intended purpose, or it had been described such that a person having ordinary skill in the field of the technology could have made and used the claimed invention.

Nitro contends that the Horn River System is prior art because it was known to others in the United States before the earliest priority date for each of the Asserted Claims, and because it was sold or offered for sale in the United States one year before that date.  Cameron contends that the earliest priority date is September 23, 2011.

Cameron contends that Nitro has not proven that the Horn River System is prior art because it was only known, made, used, assembled, sold, or offered for sale in Canada, outside the United States.  Further, Cameron contends that Nitro has not proven that the Horn River System was known to others in the United States because the information about it relied on by Nitro has not been shown to be reasonably accessible to the public before September 2011 or March 2012, and

that Nitro has not proven that the "Horn River System" was sold or offered for sale one year before that date.

Oral testimony of a single witness is insufficient to prove that something is prior art. A party seeking to prove that something is prior art must provide evidence that corroborates a witness's oral testimony, especially where the oral testimony comes from an interested witness, or a witness testifying on behalf of an interested party. Documentary or physical evidence that is made contemporaneously with the inventive process provides the most reliable proof that the testimony has been corroborated, but corroborating evidence may also consist of testimony of another witness to the actual reduction to practice or it may consist of evidence of surrounding facts and circumstances independent of information received from the oral testimony.

To determine whether a party has corroborated a witness's oral testimony, you may consider the following factors:

(1) The relationship between the corroborating witness and the alleged prior user;

(2) The time period between the event and this trial;

(3) The interest of the corroborating witness in the subject matter of this suit;

(4) Contradiction or impeachment of the witness's testimony;

(5) Extent and detail of the corroborating witness's testimony;

(6) The witness's familiarity with the subject matter of the patented invention and the alleged prior use;

(7) Probability that a prior use could occur considering the state of the art at the time; and

(8) Impact of the invention on the industry, and the commercial value of its practice.

If you find that the party has not corroborated a witness's oral testimony with other evidence, you are not permitted to find that the subject of that oral testimony qualifies as prior art

or supports a prior date of invention. Keep in mind that you do not need to find that every single detail of the oral testimony is independently supported by the corroborating evidence; you just need to find that the evidence shows the witness's testimony to be credible.

**Instruction No. 10: Anticipation[10]**

In order for someone to be entitled to a patent, the invention must actually be "new." Nitro contends that Claims 11-14 and 18 of the '800 Patent are invalid because those claims are not new. The law refers to this as "anticipated." Nitro must convince you of this by clear and convincing evidence, i.e., that the evidence demonstrates that it is highly probable that Claims 11-14 and 18 of the '800 Patent are invalid.

Specifically, Nitro contends that the Horn River System is prior art that anticipates Claims 11-14 and 18 of the '800 Patent. If you determine that Nitro has proven the Horn River System qualifies as prior art, then you must decide whether Nitro has also proven that the Horn River System anticipates Claims 11-14 and 18 of the '800 Patent.

Nitro must prove by clear and convincing evidence that all of the requirements of Claims 11-14 and 18 are present in the Horn River System. To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed and arranged as in the claim. The claim requirements may either be disclosed expressly or inherently—that is, necessarily implied—such that a person having ordinary skill in the art in the technology of the invention, looking at that one reference, could make and use the claimed invention.

In determining whether the claims are anticipated, consider each claim separately, but understand that if a dependent claim is anticipated, then the claims from which it depends are necessarily anticipated as well.

---

[10] FCBA Model Patent Jury Instructions – ¶ B.4.3b-1.

**Instruction No. 11: Obviousness[11]**

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

Nitro may establish that a patent claim is invalid by proving, by clear and convincing evidence, that the claimed invention would have been obvious to a person having ordinary skill in the art at the time the invention was made in the field of hydraulic fracturing.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of the invention that someone would have had at the time the invention was made, the scope and content of the prior art, any differences between the prior art and the claimed invention, and, if present, so-called objective evidence or secondary considerations, which I will describe shortly. Do not use hindsight; consider only what was known at the time of the invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on combining building blocks of prior art.

In considering whether a claimed invention is obvious, you should consider whether, at the time of the claimed invention, there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in the prior art in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s);

---

[11] FCBA Model Patent Jury Instructions – ¶ B.4.3c.

(2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions.

To find it rendered the claimed invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

In deciding what the level of ordinary skill in the field of hydraulic fracturing is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) the rapidity with which innovations are made; and (5) the sophistication of the technology.

The parties agree that a person of ordinary skill in the art would have at least three years of experience working with piping systems used in oil and gas production and completions, including stimulation treatments such as fracturing, but could instead have a bachelor's degree in petroleum or mechanical engineering, or an equivalent degree, and some experience working with piping systems used in oil and gas production and completions, including education and experience in fracture stimulations.  The parties agree that the years of experience necessary may increase or decrease depending upon levels of education above or below a bachelor's degree.

Nitro further contends that a person of ordinary skill in the art must also be experienced in the art of flow back and management of the same fluids that have just been pumped into the well, while Cameron contends this additional requirement is not necessary.

In considering whether the claimed invention was obvious, you must determine the scope and content of the prior art. The scope and content of prior art for deciding whether the invention was obvious includes at least prior art in the same field as the claimed invention. It also includes prior art from different fields that a person of ordinary skill in the art would have considered when trying to solve the problem that is addressed by the invention.

In determining whether the claimed invention is obvious or not, you must take into account any objective evidence (sometimes called "secondary considerations") that may shed light on whether or not the claimed invention is obvious, such as:

a.     Whether the claimed invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

b.     Whether the claimed invention satisfied a long-felt need;

c.     Whether others had tried and failed to make the claimed invention;

d.     Whether others invented the claimed invention at roughly the same time;

e.     Whether others copied the claimed invention;

f.     Whether there were changes or related technologies or market needs contemporaneous with the claimed invention;

g.     Whether the claimed invention achieved unexpected results;

h.     Whether others in the field praised the claimed invention;

i.     Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention;

j.     Whether others sought or obtained rights to the patent from the patent holder; and

k.     Whether the inventor proceeded contrary to accepted wisdom in the field.

In determining whether the claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then the claims from which it depends are necessarily obvious as well.

**Instruction No. 12: Written Description[12]**

The patent law contains certain requirements for the part of the patent called the specification. The written description requirement is designed to ensure that the inventor was in possession of the full scope of claimed invention as of the patent claim's effective filing date. Nitro contends that the Asserted Claims of Cameron's Patents are invalid because the specification of the Asserted Patents does not contain an adequate written description of the invention in the Asserted Claims on the effective filing date.

In evaluating Nitro's written description defense, you must consider the specifications for the Asserted Patents—that is, the specification for the '800 Patent and the '645 Patent in your Juror Notebooks.

To succeed on its written description defense, Nitro must show by clear and convincing evidence that a person having ordinary skill in the field reading the patent specification would not have recognized that it describes the full scope of the invention as it is finally claimed in the Asserted Claims. If a patent claim lacks adequate written description, it is invalid.

In deciding whether the patent specification satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent as of the effective filing date of the specifications, which is September 23, 2011. The specification must describe the full scope of the claimed invention, including each element thereof, either expressly or inherently. A claimed element is disclosed inherently if a person having ordinary skill in the field as of September 23, 2011 would have understood that the element is necessarily present in what the specification discloses. If the specification discloses only

---

[12] FCBA Model Patent Jury Instructions – ¶ B.4.2a.

enough to make the claimed invention obvious to a person having ordinary skill, it is not sufficient and the claim with that element is invalid.

The written description does not have to be in the exact words of the claim. The written description requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent specification. Adequate written description does not require either examples or an actual reduction to practice of the claimed invention(s). However, a mere wish or plan for obtaining the claimed invention(s) is not adequate written description. Rather, the level of disclosure required depends on a variety of factors, such as the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, and other considerations appropriate to the subject matter.

## IV.    WILLFUL INFRINGEMENT

**Instruction No. 13: Willful Infringement[13]**

In this case, Cameron argues that Nitro willfully infringed the Asserted Patents.  If you find that Nitro failed to prove that any of the Asserted Claims are invalid, you must go on and address the additional issue of whether or not Nitro's infringement was willful.  Willfulness requires you to determine whether Cameron proved that it is more likely than not that Nitro knew of Cameron's patent and that the infringement by Nitro was deliberate or intentional.

You may not determine that the infringement was willful just because Nitro was aware of the Asserted Patents and infringed them.  Instead, you must also find that Nitro deliberately infringed the Asserted Patents.

To determine whether Nitro acted willfully, consider all facts and assess Nitro's knowledge at the time of the challenged conduct. Facts that may be considered include, but are not limited, to:

(1) Whether or not Nitro acted consistently with the standards of behavior for its industry;

(2) Whether or not Nitro intentionally copied a product of Cameron that is covered by the Asserted Patents;

(3) Whether or not Nitro reasonably believed that the patent was invalid or that it did not infringe;

(4) Whether or not Nitro made a good-faith effort to avoid infringing the Asserted Patents, for example, whether Nitro attempted to design around the Asserted Patents; and

(5) Whether or not Nitro tried to cover up its infringement.

---

[13] FCBA Model Patent Jury Instructions – ¶ B.3.10.

## V.     DAMAGES

**Instruction No. 14: Introduction[14]**

If you find that Nitro failed to prove that any of the Asserted Claims are invalid, you must then consider what amount of damages to award to Cameron. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that Nitro has proven that all Asserted Claims are invalid, then Cameron is not entitled to any damages.

The damages you award must be adequate to compensate Cameron for the infringement. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put Cameron in approximately the same financial position that it would have been in had the infringement not occurred.

Cameron has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Cameron establishes that it more likely than not has suffered. While Cameron is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

There are different types of damages that Cameron may be entitled to recover. In this case, Cameron seeks lost profits and a reasonable royalty. Lost profits consist of any actual reduction in business profits Cameron suffered as a result of Nitro's infringement. A reasonable royalty is defined as the money amount Cameron and Nitro would have agreed upon as a fee for use of the invention at the time just prior to when infringement began. But, regardless of the type of damages

---

[14] FCBA Model Patent Jury Instructions – ¶ B.5.1.

you may choose to award, you must be careful to ensure that award is no more and no less than the value of the patented invention.

I will give more detailed instructions regarding damages shortly. Note, however, that Cameron is entitled to recover no less than a reasonable royalty for each infringing sale.

**Instruction No. 15: Lost Profits—Panduit[15]**

Here, Cameron seeks lost profits only for Nitro's sales to Oxy from April 3, 2018, to December 31, 2019.

To recover lost profits (as opposed to reasonable royalties), Cameron must show a causal relationship between the infringement and Cameron's loss of profit. In other words, Cameron must show that, but for the infringement, there is a reasonable probability that Cameron would have earned higher profits. To show this, Cameron must prove that, if there had been no infringement, it would have made some portion of the sales that Nitro made of the infringing product, or it would have sold more products that are functionally related to those products.

Cameron is entitled to lost profits if it establishes each of the following:

(1)     That there was demand for the patented product or patented method.

(2)     That there were no available, acceptable, non-infringing substitute products, or, if there were, Cameron's market share of the number of the sales made by Nitro that Cameron would have made, despite the availability of other acceptable non-infringing substitutes.

(3)     That Cameron had the manufacturing and marketing capacity to make any infringing sales actually made by Nitro and for which Cameron seeks an award of lost profits—in other words, that Cameron was capable of satisfying the demand.

(4)     The amount of profit that Cameron would have made if Nitro had not infringed.


Demand for the patented product can be proven by significant sales of a patent holder's patented product or significant sales of an infringing product containing the patented features.

---

[15] FCBA Model Patent Jury Instructions – ¶ B.5.2.

To be an "acceptable, non-infringing substitute," a product must have the advantages of the patented invention that were important to people who purchased an alleged infringer's product. If purchasers of an alleged infringer's product were motivated to buy that product because of features available only from that product and a patent holder's patented product, then some other, alternative product is not an acceptable substitute, even if it otherwise competed with a patent holder's and an alleged infringer's products. On the other hand, if the realities of the marketplace are that competitors other than the patentee would likely have captured the sales made by the infringer, despite a difference in the products, then the patentee is not entitled to lost profits on those sales.

An alternative product may be considered "available" as a potential substitute even if the product was not actually on sale during the infringement period. Factors suggesting the alternative was available include whether the material, experience, and know-how to make or use the alleged substitute were readily available at the time of infringement. Factors suggesting the alternative was not available include whether the material was of such high cost as to render the alternative unavailable and whether an alleged infringer had to design or invent around the patented technology to develop an alleged substitute.

A patent holder is only entitled to lost profits for sales it could have actually made. In other words, Cameron must show that it had the manufacturing and marketing capability to make the sales it said it lost. This means Cameron must prove it is more probable than not that it could have made and sold, or could have had someone else make or sell for it, the additional products it says it could have sold but for the infringement.

A patent holder may calculate its lost profits on lost sales by computing the lost revenue for sales it claims it would have made but for the infringement and subtracting from that figure the amount of additional costs or expenses it would have incurred in making those lost sales, such as cost of goods, sales costs, packaging costs, and shipping costs. Certain fixed costs that do not vary with increases in production or scale, such as taxes, insurance, rent, and administrative overhead, should not be subtracted from a patent holder's lost revenue.

**Instruction No. 16: Reasonable Royalty[16]**

If you find that a patent claim is not invalid, Cameron is entitled to at least a reasonable royalty to compensate it for that infringement.

If you find that Cameron has not proved its claim for lost profits as to the sales to Oxy in 2018 and 2019, or has proved its claim for lost profits for only a portion of the infringing sales, then you must award Cameron a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages.

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

Reasonable royalty awards may take the form of a running royalty based on the revenue from or the volume of sales of licensed products. A running royalty can be calculated, for example,

---

[16] FCBA Model Patent Jury Instructions – B.5.5–5.9.

by multiplying a royalty base by a royalty rate, or by multiplying the number of infringing systems or units sold by a royalty amount per unit.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1)   The royalties received by Cameron for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2)   The rates paid by a licensee for the use of other patents comparable to the patent-in- suit.

(3)   The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)   Cameron's established policy and marketing program to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)   The commercial relationship between Cameron and licensees, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)   The effect of selling the patented specialty in promoting sales of other Cameron products or systems, the existing value of the invention to Cameron as a generator of sales of non-patented items, and the extent of such derivative or convoyed sales.

(7)   The duration of the patent and the term of the license.

(8)   The established profitability of systems made under the patents, their commercial success, and their current popularity.

(9)   The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)   The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by Cameron, and the benefits to those who have used the invention.

(11)   The extent to which Nitro has made use of the invention and any evidence probative of the value of that use.

(12)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)    The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)    The opinion and testimony of qualified experts.

(15)    The amount that a licensor (such as Cameron) and a licensee (such as Nitro) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular system embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty Nitro would have been willing to pay and that Cameron would have been willing to accept, acting as normally prudent business people.

Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

The hypothetical license is deemed to be a voluntary agreement. When determining if a license agreement is comparable to the hypothetical license, you may consider whether the license agreement is between parties to a lawsuit and whether the license agreement was a settlement influenced by a desire to avoid further litigation.

## VI.    CONCLUSION

**Instruction No. 17: Duty to Deliberate; Notes[17]**

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to re-examine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, your juror notebooks, and your notes. You will have a Verdict Form that tells you which specific questions you must answer in your deliberations. You must select a jury foreperson to guide you in your deliberations, to speak for you here in the courtroom, and to fill out the Verdict Form when your deliberations are complete.

Your verdict must be unanimous. This means that every juror must agree with all answers on the Verdict Form. After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the Verdict Form and sign and date it.

---

[17] Fifth Circuit Pattern Jury Instructions – Civil, 3.7 (June 2020).

If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question. After you have concluded your service and I have discharged you from your jury duty, you are not required to talk with anyone about the case, but you may do so if you wish.

You may now proceed to the jury room to begin your deliberations.


KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| CAMERON INTERNATIONAL CORPORATION, | § § § | |
| Plaintiff, | § § | |
| | § | CIVIL ACTION NO. 4:18-cv-02533 |
| v. | § § | |
| NITRO FLUIDS L.L.C., | § § | **JURY TRIAL REQUESTED** |
| | § | |
| Defendant. | § § | |

**<u>VERDICT FORM</u>**

I.     **INVALIDITY**

     A.     **Prior Art**

     1.     Has Defendant Nitro proven by clear and convincing evidence that the Horn River System is prior art to the asserted patents?

           **For Nitro**            **For Cameron**

           Yes (prior art) \_\_\_\_\_      No (not prior art) ✕

*If you answered "no," skip the next question (Question No. 2) and proceed to Question No. 3.*

**B.        Anticipation**

*Answer Question No. 2 only if you have found that the Horn River System qualifies as prior art by answering "yes" to Question No. 1 above.  If you answered "no" to Question No. 1, please skip this question and proceed to Question No. 3.*

2.        Has Defendant Nitro proven by clear and convincing evidence that the asserted claims of the '800 Patent are invalid as anticipated by the Horn River System?

**'800 Patent Claims**:

|            | **For Nitro**        | **For Cameron**          |
|------------|----------------------|--------------------------|
| Claim 11:  | Yes (invalid) _____  | No (not invalid) _____   |
| Claim 12:  | Yes (invalid) _____  | No (not invalid) _____   |
| Claim 13:  | Yes (invalid) _____  | No (not invalid) _____   |
| Claim 14:  | Yes (invalid) _____  | No (not invalid) _____   |
| Claim 18:  | Yes (invalid) _____  | No (not invalid) _____   |

### C.     Obviousness

3.     Has Defendant Nitro proven by clear and convincing evidence that any of the asserted patent claims listed below are invalid because the claimed invention would have been obvious at the time of the invention over the prior art?

**'800 Patent Claims**:

*For the '800 Patent, you may consider only the Power Chokes System, and (if you answered "yes" to Question No. 1) the Horn River System.*

|  | **For Nitro** | **For Cameron** |
|---|---|---|
| Claim 11: | Yes (invalid) _____ | No (not invalid) ✕ |
| Claim 12: | Yes (invalid) _____ | No (not invalid) ✕ |
| Claim 13: | Yes (invalid) _____ | No (not invalid) ✕ |
| Claim 14: | Yes (invalid) _____ | No (not invalid) ✕ |
| Claim 18: | Yes (invalid) _____ | No (not invalid) ✕ |

**'645 Patent Claims**:

*For the '645 Patent, you may consider all of the prior art patents and printed publications, the Power Chokes System, and (if you answered "yes" to Question No. 1) the Horn River System.*

|  | **For Nitro** | **For Cameron** |
|---|---|---|
| Claim 10: | Yes (invalid) _____ | No (not invalid) ✕ |
| Claim 13: | Yes (invalid) _____ | No (not invalid) ✕ |
| Claim 15: | Yes (invalid) _____ | No (not invalid) ✕ |
| Claim 18: | Yes (invalid) _____ | No (not invalid) ✕ |

**D.      Written Description**

4.      Has Defendant Nitro proven by clear and convincing evidence that any of the asserted patent claims listed below are invalid as unsupported by the written description?

**'800 Patent Claims**:

|  | **For Nitro** | **For Cameron** |
|---|---|---|
| Claim 11: | Yes (invalid) _____ | No (not invalid) ___✕___ |
| Claim 12: | Yes (invalid) _____ | No (not invalid) ___✕___ |
| Claim 13: | Yes (invalid) _____ | No (not invalid) ___✕___ |
| Claim 14: | Yes (invalid) _____ | No (not invalid) ___✕___ |
| Claim 18: | Yes (invalid) _____ | No (not invalid) ✕___ |

**'645 Patent Claims**:

|  | **For Nitro** | **For Cameron** |
|---|---|---|
| Claim 10: | Yes (invalid) _____ | No (not invalid) ___✕___ |
| Claim 13: | Yes (invalid) _____ | No (not invalid) ___✕___ |
| Claim 15: | Yes (invalid) _____ | No (not invalid) ___✕___ |
| Claim 18: | Yes (invalid) _____ | No (not invalid) ___✕___ |

## II.     WILLFUL INFRINGEMENT

5.     Has Plaintiff Cameron proven by a preponderance of the evidence that Defendant Nitro's infringement of any of the asserted patents listed below was willful?

|  | **For Cameron** | **For Nitro** |
|---|---|---|
| '800 Patent: | Yes (willful) ✕ | No (not willful) _____ |
| '645 Patent: | Yes (willful) ✕ | No (not willful) _____ |

## III.  DAMAGES

6.    Has Plaintiff Cameron proven by a preponderance of the evidence that it is entitled to lost profits for Defendant Nitro's infringing sales to Oxy in 2018 and 2019?

**For Cameron**                    **For Nitro**

Yes (lost profits) ___✗___       No (no lost profits) _____

7.    If you answered "yes" to Question No. 6, what lost profits damages, if any, do you find that Plaintiff Cameron has proven by a preponderance that it is entitled to recover due to Defendant Nitro's infringement?

$ ___5,526,512___

8.    For any infringement for which Plaintiff Cameron did not prove it is entitled to lost profits (i.e., excluding any damages awarded in Question No. 7 above), what has Cameron proved it is entitled to as a reasonable royalty for Defendant Nitro's infringement?

$ ___3,444,612___

## IV.    CONCLUSION

You have reached the end of the verdict form.  Review the completed form to ensure that it accurately reflects your unanimous determinations.  The Jury Foreperson should then sign and date the verdict form in the space below and notify the Court Security Officer that you have reached a verdict.  The Foreperson should retain possession of the verdict form and bring it to the courtroom with the jury.

Date: March 27, 2024

_____
Foreperson