IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CAMERON INTERNATIONAL CORPORATION, | § § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 4:18-cv-02533 |
| v. | § § | |
| NITRO FLUIDS L.L.C., | § § | **JURY TRIAL REQUESTED** |
| Defendant. | § § § | |

**CAMERON'S ANSWERING BRIEF IN OPPOSITION TO NITRO'S
RENEWED RULE 50(b) MOTIONS FOR JUDGMENT AS A MATTER OF LAW
<u>ON WILLFUL INFRINGEMENT AND LOST PROFITS</u>**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................1

II. LEGAL STANDARD............................................................................................................1

III. ARGUMENT .........................................................................................................................2

    A. The Jury's Willfulness Verdict Is Supported By Ample Evidence ..........................2

        1. Ample evidence of Nitro's pre-filing conduct supports willfulness.............3

        2. Ample evidence of Nitro's post-filing conduct supports willfulness. ..................................................................................................6

        3. Nitro's arguments regarding invalidity were not raised in its pre-verdict JMOL and, in any event, are without merit. .....................................7

    B. The Court Should Deny Nitro's Renewed JMOL Of No Lost Profits......................8

        1. Ample evidence supports the jury's finding that there were no acceptable non-infringing alternatives available to Oxy in 2018 to 2019..................................................................................................................8

        2. The jury had ample evidence to conclude that there were no available non-infringing single-line systems in the market from 2018 and 2019........................................................................................................10

IV. CONCLUSION....................................................................................................................11

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*
   258 F. Supp. 3d 1013 (N.D. Cal. 2017) ................................................................. 4, 6

*Bagby Elevator Co. v. Schindler Elevator Corp.*
   609 F.3d 768 (5th Cir. 2010) ........................................................................................ 2

*BIC Leisure Prod., Inc. v. Windsurfing Int'l, Inc.*
   1 F.3d 1214 (Fed. Cir. 1993) ........................................................................................ 9

*Duro-Last, Inc. v. Custom Seal, Inc.*
   321 F.3d 1098 (Fed. Cir. 2003) .................................................................................... 7

*EagleView Techs., Inc. v. Xactware Sols., Inc.*
   522 F. Supp. 3d 40 (D.N.J. 2021) ................................................................................ 6

*Leader Techs., Inc. v. Facebook, Inc.*
   678 F.3d 1300 (Fed. Cir. 2012) .................................................................................... 1

*Mentor Graphics Corp. v. EVE-USA, Inc.*
   851 F.3d 1275 (Fed. Cir. 2017) .................................................................................... 9

*Micro Chem., Inc. v. Lextron, Inc.*
   318 F.3d 1119 (Fed. Cir. 2003) .................................................................................... 9

*Minnesota Min. & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*
   976 F.2d 1559 (Fed. Cir. 1992) .................................................................................... 3

*Reeves v. Sanderson Plumbing Prods., Inc.*
   530 U.S. 133 (2000) ..................................................................................................... 2

*SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*
   396 F. Supp. 3d 323 (S.D.N.Y. 2019) ..................................................................... 5, 6

*SRI Int'l, Inc. v. Cisco Sys., Inc.*
   14 F.4th 1323 (Fed. Cir. 2021) .................................................................................... 2

*WBIP, LLC v. Kohler Co.*
   829 F.3d 1317 (Fed. Cir. 2016) ............................................................................ 2, 6, 8

*WCM Indus., Inc. v. IPS Corp.*
   721 F. App'x 959 (Fed. Cir. 2018) ........................................................................ 2, 5, 6

**Other Authorities**

Fed. R. Civ. P. 32(a)(3) ................................................................................................................4

Fed. R. Civ. P. 50 .........................................................................................................................1

Fed. R. Civ. P. 50(a) .................................................................................................................1, 7

Fed. R. Civ. P. 50(a)(1) ................................................................................................................2

Fed. R. Civ. P. 50(b) .................................................................................................................1, 5

Fed. R. Evid. 103 .........................................................................................................................3

I.   **INTRODUCTION**

The Court can easily deny both of Nitro's "renewed" JMOLs. As to willfulness, Nitro argues that "Cameron failed to present admissible evidence that Nitro was aware of either of Cameron's two Asserted Patents before this lawsuit was filed, or that Nitro's post-suit conduct amounted to anything more than ***garden-variety***, non-willful infringement." Dkt. 408 at 1. Nitro's characterization of its infringement as "garden-variety" only demonstrates that Nitro's arguments are based on Nitro's own version of selected facts that the jury rejected. Ample evidence supports the jury's willfulness verdict, so Nitro's JMOL of no willfulness must be denied.

As to lost profits, the jury awarded lost profits ***only*** on Nitro's infringing sales ***to Oxy from 2018 to 2019***, and the jury heard **unrebutted** evidence that there were no acceptable non-infringing alternatives available ***to Oxy in 2018 or 2019***. Separately, the jury heard ample evidence—including from Nitro's own expert—that there were no non-infringing alternatives on the market generally. As Nitro's expert opined, "Cameron could conceivably *exclude anyone without a license from conducting a fracturing operation using a single rigid line* to convey fracturing fluid to the well" with other non-asserted patents. Day 5 PM Tr. at 175:6–21. Thus, Nitro's argument that Cameron failed to prove the absence of non-infringing alternatives can easily be dismissed.

As set forth below, the Court should deny both of Nitro's "renewed" JMOLs.

II.   **LEGAL STANDARD**

Courts apply the law of the regional circuit when deciding Rule 50 motions. *See, e.g.*, *Leader Techs., Inc. v. Facebook, Inc.*, 678 F.3d 1300, 1305 (Fed. Cir. 2012). If a motion for judgment as a matter of law under Rule 50(a) is denied, "the movant may file a renewed motion" seeking the same relief under Rule 50(b). FED. R. CIV. P. 50(b). A court may grant a motion for judgment as a matter of law only if, after a party has been full heard on an issue, "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on

that issue." FED. R. CIV. P. 50(a)(1). However, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence" because "'[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Indeed, "[w]hen evaluating the sufficiency of the evidence, [the court must] accord 'great deference to the jury's verdict.' Thus, [the court must] 'view all of the evidence in the light most favorable to the verdict and reverse only if the evidence points so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at any contrary conclusion.'" *Bagby Elevator Co. v. Schindler Elevator Corp.*, 609 F.3d 768, 773 (5th Cir. 2010)

### III. ARGUMENT

#### A. The Jury's Willfulness Verdict Is Supported By Ample Evidence

"Under [the Supreme Court's decision in] *Halo*, the concept of 'willfulness' requires a jury to find no more than deliberate or intentional infringement." *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1330 (Fed. Cir. 2021). Indeed, "*Halo* emphasized that subjective willfulness alone … can support an award of enhanced damages." *WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 969 (Fed. Cir. 2018). Hence, in reviewing Nitro's JMOL, the Court "must determine whether the evidence, when viewed in the light most favorable to [Cameron], was sufficient to prove by a preponderance of the evidence that [Nitro] acted despite a risk of infringement that was either known or so obvious that it should have been known." *Id*. at 970. Here, ample evidence supports the jury's determination that Nitro "knew of Cameron's patent[s]" and that its infringement was "deliberate or intentional." Day 6 PM Tr. at 49:5–8.

2

1. **Ample evidence of Nitro's pre-filing conduct supports willfulness.**

Nitro asserts that "Cameron presented *no evidence* that Nitro was aware of the Asserted Patents before the suit was filed" because, according to Nitro, any evidence pre-dating issuance of the Asserted Patents is irrelevant. Dkt. 408 at 8. However, Nitro cites no authority that *pre-suit* knowledge is required for willfulness, and the Federal Circuit has long held that "*pre-patent* conduct may also be used to support a finding of willfulness." *Minnesota Min. & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1581 (Fed. Cir. 1992) (affirming willfulness from conduct pre-dating issuance by 3 years).

For example, the jury heard evidence that Nitro copied Cameron's Monoline system in March 2017 for one of Cameron's largest customers (Oxy). *See* Dkt. 409 at 4. As Mr. Ganzinotti testified, "Oxy themselves said as long as they [Nitro] provide a copy of [Cameron's] system, we're going to continue to use [Nitro]." Day 2 AM Tr. at 86:25–87:9, 95:3–19.[1] Moreover, Cameron was the only company providing single-line systems until March 2017, when Nitro entered the market by copying Cameron's Monoline system. *Id*. at 82:12–23. Nitro used "Monoline"—a term trademarked by Cameron and only used by Cameron at that time—to describe its systems to Oxy, as well as in other customer estimates and drawings, because "[t]hat was what the customer called it." Day 4 AM Tr. at 23:13–15, 47:6–48:13, 52:22–54:4 (Harper); Dkt. 409-2 (PTX-52); Dkt. 409-3 (PTX-59). The jury was free to find that Nitro copied from this evidence.

Nitro argues that this evidence "cannot support the conclusion that Nitro was in fact copying Cameron's system" because Nitro did not use swivels (Dkt. 408 at 6), but the jury was free to reject Nitro's argument that omitting one component (much less an unclaimed component)

---

[1] Nitro asserts that Mr. Ganzinotti's testimony is hearsay (Dkt. 408 at 6), but the time for objecting or moving to strike alleged hearsay was at trial. *See* Fed. R. Evid. 103 (party must "timely object[] or move[] to strike"). Nitro did not, so Nitro's objection is waived.

3

negated copying—much like changing one line of text does not negate plagiarizing. Nitro also argues that "even assuming this evidence was sufficient to establish that Nitro copied Cameron's commercial system, it is legally insufficient to show willful patent infringement" because the patents had not issued in 2017. Dkt. 408 at 6. Nitro ignores that "copying" is not required for willfulness but rather is a factor that the jury considers as part of the "all the facts." *See* Day 6 PM Tr. at 49:13–20 (listing factors). Courts have also rejected Nitro's argument. *See Apple Inc. v. Samsung Elecs. Co.*, 258 F. Supp. 3d 1013, 1028 (N.D. Cal. 2017) (finding that "copying supports the jury's finding of willfulness" where the "initial copying" was before notice of patents, but after having notice infringer "decided to continue selling copied [] products despite known, albeit less desirable, non-infringing alternatives").

Next, Nitro argues that Cameron's March 2017 notice letter "cannot, *as a matter of law*, put Nitro on notice of [the asserted '800 and '645] patents or any of their claims, because they did not even exist at the time the letter was received." Dkt. 408 at 5. However, the jury heard that the asserted '800 Patent was filed as a continuation of the '430 Patent in February 2017, before the notice letter was sent to Nitro. PTX-1. Further, the jury heard from Mr. Simpson, Nitro's 30(b)(6) witness on knowledge of the patents, who testified that Nitro first became aware that Cameron had patent claims that did not require swivels "[w]hen we got the cease and desist letter." Day 2 AM Tr. at 121:3–5.[2] While Mr. Koricanek tried to discredit his business partner's testimony by calling him "slow," the jury was free to (and did) reject this as a pretext to avoid willful infringement. Day 2 AM 121:25–122:1. The jury also heard that Cameron asserted the '430 and '450 Patents against Nitro on July 20, 2018. Day 2 PM Tr. at 129:12–130:1 (Koricanek).

---

[2] Nitro's argues that Cameron "never introduced [Mr. Simpson's deposition] as testimonial evidence" (Dkt. 408 at 5), but Mr. Simpson is a officer, director, and manager of Nitro. Under Rule 32(a)(3), Cameron was allowed to use Mr. Simpson's testimony "for any purpose" at trial.

4

All of these events predated Cameron's September 7, 2018 amended complaint that added the '800 Patent. Dkt. 11. After the '800 Patent was asserted, Nitro learned of the '645 Patent in October 2019 (Day 2 AM Tr. at 122:23–123:1), prior to when Cameron first asserted the '645 Patent in February 2020. Dkt. 11 at ¶¶ 47–48 (citing WDTX Dkt. 1). This evidence is more than sufficient to show that Nitro had pre-suit knowledge of both the '800 Patent and the '645 Patent.

For example, in *WCM*, the Federal Circuit rejected the infringer's argument that JMOL should have been granted "because there is no evidence that [it] had knowledge of the patents before the lawsuit." 721 F. App'x at 970. The Federal Circuit reiterated that "[w]hether an act is 'willful' is by definition a question of the actor's intent, the answer to which must be inferred from all the circumstances," and found there was circumstantial evidence "for a reasonable jury to conclude that [infringer] did know of [the] patents as they issued, if not earlier," including that the infringer knew of 2 of 3 asserted patents (which were related), knew the patentee's products were marked "patent pending," and had "a culture of copying." *Id*. at 970–71. This was "sufficient evidence for a reasonable jury to have found that [the] infringement was willful." *Id*.

Similarly, in *SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 396 F. Supp. 3d 323, 334 (S.D.N.Y. 2019), the court denied the Rule 50(b) motion where the infringer argued "willfulness cannot be based on conduct prior to … when [asserted] Patent issued," finding "there was circumstantial evidence … sufficient for the jury to reasonably infer [it] had knowledge of the [patent]," including that the infringer knew of the parent patent for "the same method and apparatus," similarities in the infringing product, and the infringer hired the patentee's ex-employee. Relying on *WCM*, the court found that given "the totality of the circumstances … it would be artificial to ignore the reasonable possibility that [infringer] might have learned of the application that would become the [asserted] Patent." *Id*. (citing *WCM*, 721 F. App'x at 970 n.4).

5

The jury's inference "arguably might not have been reasonable had [infringer] adduced evidence establishing when, in fact, it learned of the patent. *See id*. But without such evidence, the jury was not forbidden from concluding, based on all of the circumstances, that [infringer] in fact did know of the [] Patent, at or before the time of its issuance." *Id*. at 335.

Accordingly, considering the "the totality of the circumstances," ample evidence supports the jury's determination that Nitro "knew of Cameron's patent[s]" and that its infringement was "deliberate or intentional." Day 6 PM Tr. at 49:5–8. Nitro's JMOL should be denied.

### 2. Ample evidence of Nitro's post-filing conduct supports willfulness.

While there is ample pre-suit evidence supports the jury's willfulness finding, Nitro's post-filing conduct alone supports willful infringement. Indeed, "following *Halo*, the question is whether the infringing conduct, whether it occurs pre- or post-filing, constitutes 'egregious ... misconduct.'" *Apple Inc. v. Samsung Elecs. Co.*, 258 F. Supp. 3d 1013, 1026–27 (N.D. Cal. 2017); *see EagleView Techs., Inc. v. Xactware Sols., Inc.*, 522 F. Supp. 3d 40, 53 (D.N.J. 2021) (finding that "district courts have routinely rejected Defendants' argument" that "they should not be penalized for their continued infringement during trial because they maintained a good-faith belief of non-infringement and were not restricted from doing so by a preliminary injunction").

For example, Nitro's only basis for disputing infringement was that its system "did not have adjustability." Day 2 AM Tr. at 104:3–8 (Koricanek). But Nitro knew Cameron's patents did not require swivels or adjustability when it received Cameron's letter in March 2017. Day 2 AM Tr. at 121:3–5 (Simpson 30(b)(6)). The asserted claims never recited adjustability, and Nitro's proposed construction to read in "adjustable" was rejected in October 2020. WDTX Dkt. 55. As Mr. Koricanek testified, "[w]e haven't done anything to try to not infringe" and made no changes to the system to avoid infringement ***even after*** he realized that the claims did not require adjustability. Day 2 AM Tr. at 126:24–128:12.

Notably, Nitro's expert Mr. Tolman agreed infringement "was obvious," but Nitro "never asked" him whether it infringed during the 5 years he was retained. Day 5 PM Tr. at 177:4–179:2. Nitro's only counter is that "Mr. Tolman testified that he never performed an infringement analysis" and that "any conclusions he came to about infringement were necessarily reached post-filing." Dkt. 408 at 7. This only proves that Nitro was willfully blind to its infringement, or knew it was infringing but continued doing so anyways—far from "garden variety" infringement.

Hence, ample evidence supports the jury's determination that Nitro "knew of Cameron's patent[s]" and that its infringement was "deliberate or intentional." Day 6 PM Tr. at 49:5–8.

### 3. Nitro's arguments regarding invalidity were not raised in its pre-verdict JMOL and, in any event, are without merit.

Nitro finally argues that it "had a reasonable basis to believe that Cameron's Patents were invalid" (Dkt. 408 at 7–8), but this is not supported in Nitro's pre-verdict Rule 50(a) JMOL. As Nitro argued in its pre-verdict JMOL at trial, "the '800 Patent was asserted in the middle of the lawsuit, and the '645 Patent was asserted much later in the lawsuit," so "there cannot be a finding of willfulness because of when they were asserted." Day 3 PM Tr. 95:25–96:24. Hence, because Nitro never argued that it had "a reasonable basis to believe that Cameron's Patents were invalid" as a ground for JMOL of no willfulness, Nitro cannot now "renew" a JMOL of no willfulness on this ground. Indeed, it is "constitutionally impermissible for the district court to re-examine the jury's verdict and to enter JMOL on grounds not raised in the pre-verdict JMOL." *Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1107 (Fed. Cir. 2003).

Moreover, Nitro's argument that it "had a reasonable basis to believe that Cameron's Patents were invalid" is not even a defense to willfulness, but rather is one factor considered in the analysis—just as the jury was instructed. Day 6 PM Tr. at 49:21–22; *see also id*. at 98:18–21 (Nitro wrongly arguing "a reasonable belief that the patent is invalid is a total defense"). In any

7

event, Nitro only points to the PTAB's decision finding certain claims of the '800 Patent invalid, but such litigation defenses are "no longer a defense to willful[ness]" after *Halo*. *WBIP, LLC v. Kohler Co.*, 829 F.3d1317, 1341 (Fed. Cir. 2016). And as detailed in Cameron's Post-Trial Motion (Dkt. 409 at 4–6), ample evidence shows that Nitro had no good-faith belief of invalidity.

### B.   The Court Should Deny Nitro's Renewed JMOL Of No Lost Profits

#### 1.   Ample evidence supports the jury's finding that there were no acceptable non-infringing alternatives <u>available to Oxy</u> in 2018 to 2019.

The jury awarded Cameron lost profits for Nitro's infringing sales to ***one customer*** (Oxy) from 2018 to 2019, and reasonable royalties for other infringing sales. Dkt. 387. Nitro argues that the Court should grant JMOL of no lost profits because "Cameron failed to prove an ***absence*** of acceptable non-infringing alternatives as required by *Panduit* factor 2." Dkt. 407 at 6. To the contrary, ample evidence supported the jury's finding that there were no acceptable non-infringing alternatives for those lost sales to Oxy in 2018 and 2019.

For example, the jury heard evidence that Cameron was the first company to offer single-line fracturing systems in the industry and was the only company offering them from 2014 until 2017. Day 2 AM Tr. at 82:12–23 (Ganzinotti). By 2016, Cameron was doing "all of Oxy's work" and continued to do so until March 2017, when Nitro copied Cameron's patented system and took a portion of Cameron's work with Oxy. *Id*. at 63:15–64:23, 70:16–72:1, 76:3–10 (Ganzinotti). Nitro was the first company to offer a single-line system in competition with Cameron. *Id*. at 66:3–68:2 (Ganzinotti). Although other companies began offering competing single-line systems years after Nitro, none of those companies were competing for Oxy's work. *Id*. at 56:7–17, 76:16–24 (Ganzinotti). Instead, the jury heard unrebutted evidence that Cameron and Nitro were the only companies competing for Oxy's work in 2018 and 2019. *Id*. Indeed, aside from Cameron, Nitro's Mr. Harper could identify no competition for Oxy's work. Day 4 AM Tr. at 65:19–66:18 (Harper).

8

Thus, as Mr. Tate testified based on this evidence, it's my understanding that there are no acceptable non-infringing alternatives available at Oxy in 2018 and '19." Day 3 PM at 23:5–7.

This is more than sufficient evidence for the jury to conclude that there were no acceptable non-infringing alternatives available to Oxy in 2018 and 2019. As the Federal Circuit explained:

> [I]f the customer would have bought the infringing product without the patented feature or with a different, non-infringing alternative to the patented feature, then the patentee cannot establish entitlement to lost profits for that particular sale. **And this determination is made on a customer-by-customer basis**. **For this reason, it is quite common to see damage awards where, as in this case, the patentee proves entitlement to lost profits for some of its sales, but not others**. … In those circumstances, the patentee obtains its lost profits on the sales where it can prove all the *Panduit* factors and a reasonable royalty on the other infringing sales.

*Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1286 (Fed. Cir. 2017) (holding that Panduit factor 2 was satisfied where "[t]he relevant market (***suppliers of emulators to Intel***) contained two parties, Synopsys and Mentor"); *see also BIC Leisure Prod., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1219 (Fed. Cir. 1993) ("a patent owner may satisfy the second *Panduit* element" by showing "two suppliers in the *relevant* market"); *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1125 (Fed. Cir. 2003) (patentee shows lost profits with proof of "two suppliers in the relevant market, capability to make the diverted sales, and its profit margin").

Likewise, here, the jury heard ample evidence that the relevant market (suppliers of single-line systems to Oxy) contained two parties (Cameron and Nitro) and that Cameron would have made all of the sales that Nitro made to Oxy but for Nitro's infringement in 2018 and 2019. Accordingly, Nitro's JMOL should be denied.[3]

---

[3]     Nitro wrongly asserts that Mr. Ganzinotti testified that "there were other competitors (besides Nitro) ***for Oxy's monoline*** business." Dkt. 407 at 4. Mr. Ganzinotti never said this on the pages cited by Nitro (Day 2 AM Tr. at 97:23–98:14, 100:17–23) or elsewhere, but instead testified the opposite in the portions of the transcript skipped by Nitro (*id*. at 100:10–16). Further, the jury was free to reject Nitro's speculation that there were other single-line systems available to Oxy because "Oxy was searching for an alternative to Cameron." Dkt. 407 at 5.

### 2. The jury had ample evidence to conclude that there were no available non-infringing single-line systems in the market from 2018 and 2019.

Separately, the jury had ample evidence from which it could have found that there were no non-infringing single-line systems available in the market in general in 2018 and 2019. Nitro's JMOL should be denied for this independent reason.

Nitro wrongly argues that "Mr. Tate's opinion that Panduit factor 2 was met was excluded by the Court." Dkt. 407 at 3. Instead, Mr. Tate relied on Dr. Wooley's analysis of *five* alternatives in his *Panduit* factor 2 analysis. Dkt. 308-1 at ¶¶ 81–108. The Court's ruling was limited to "Mr. Tate's opinions on the absence of acceptable, alternative, non-infringing *monoline or single-line* systems"—***one*** of the alleged alternatives—because the Court found Dr. Wooley did not "conduct an explicit infringement analysis." Dkt. 352 at 7–9. However, the Court specifically noted that "[t]his ruling does not encompass other opinions rendered by Mr. Tate" (Dkt. 352 at 8), and made clear that "at no point did the Court rule that Cameron is barred from attempting to prove lost profits altogether." Dkt. 365 at 3.

Aside from Dr. Wooley's and Mr. Tate's opinions, there was other evidence from which the jury could have found that there were no non-infringing single-line systems on market generally.[4] The jury heard evidence from Mr. Tolman (relied by Dr. Wooley as well before Cameron closed its case-in-chief, Day 3 PM Tr. at 8:4–17) that the proposed single line systems would infringe other Cameron patents, opining that "Cameron could conceivably exclude anyone without a license from conducting a fracturing operation using a single rigid line to convey fracturing fluid to the well." Day 5 PM Tr. at 175:6–21. Nitro argues that this analysis from Mr.

---

[4] Nitro points to Cameron's statement during closing that "all the factors of the Panduit test are met" and argues that "Cameron's counsel was referring here to Mr. Tate's opinion testimony." Dkt. 407 at 3. Instead, Cameron was referring to all of the evidence presented, including Mr. Tate's testimony and the evidence discussed herein.

10

Tolman (Nitro's own witness) is insufficient, but the jury was free to believe it and reject Nitro's excuses for Mr. Tolman's relevant admission. Indeed, as Nitro's damages expert agreed, "the whole point of a patent is it gives you the right to exclude others from practicing your claims." Day 6 AM at 101:18–102:5 (Salters).

Thus, a reasonable jury could accept this evidence and reject Nitro's inapplicable testimony about the general market for single line systems.

## IV. CONCLUSION

Cameron presented more than substantial evidence on willful infringement and lost profits, as confirmed by the jury's quick verdict. Nitro's renewed motions for JMOL should be denied.

DATED: January 10, 2025

Respectfully submitted,

By: /s/ John R. Keville
John R. Keville
Attorney-in-Charge
Texas State Bar No. 00794085
Southern District of Texas ID No. 20922
jkeville@sheppardmullin.com

Michael C. Krill
Texas State Bar No. 24097954
Southern District of Texas ID No. 2782784
mkrill@sheppardmullin.com

SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
700 Louisiana Street, Suite 2750
Houston, Texas 77002-2791
Telephone: (713) 431-7100
Facsimile: (713) 431-7024

ATTORNEYS FOR DEFENDANT,
CAMERON INTERNATIONAL
CORPORATION

11

**CERTIFICATE OF SERVICE**

  I hereby certify that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule 5.1 on January 10, 2025.

                */s/ John R. Keville*